## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Eugene E. Durrly, | Case No. 21-04021 |
| Debtor. | Judge Goldgar Lake |
| Altra Federal Credit Union, | |
| Plaintiff, | |
| v. | Adv. No. |
| Eugene E. Durrly, | |
| Defendant. | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT OWED TO ALTRA FEDERAL CREDIT UNION AND TO DENY DISCHARGE**

NOW COMES Altra Federal Credit Union, the "Credit Union," by and through its attorneys Kerry Trunkett, David Lipschutz and Caroline Hasten of Trunkett & Trunkett, P.C., for its Complaint against Eugene E. Durrly, the "Defendant," brought pursuant to 11 U.S.C. §§523(a)(2)(A), (a)(6) and §§727(a)(2), (a)(4)(A) of the United States Bankruptcy Code, states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and Internal Operating Procedure 15(d) of the United States District Court for the Northern District of Illinois.

2. This is a core proceeding brought pursuant to 28 U.S.C. §157(b)(2)(I) and brought as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001.

1

3.      This is a claim for relief brought pursuant to 11 U.S.C. §§523(a)(2)(A), (a)(6) and §§727(a)(2), (a)(4)(A).

## BACKGROUND FACTS

4.      The Credit Union is a non-profit, member owned financial institution with its primary place of business in Wisconsin.

5.      Eugene E. Durrly, (the "Defendant") is an individual with a home address listed as 1819 Park Ave., #2, North Chicago, Illinois 60064.

6.      The Credit Union is a party in interest as a creditor of the Defendant arising from a retail installment contract (the "Vehicle Loan") entered into on or about March 1, 2019. The purpose of the Vehicle Loan was for the Defendant to purchase a 2011 BMW 5 Series VIN WBAFR7C50BC601262 (the "Vehicle"). A copy of the Vehicle Loan agreement is attached hereto as Exhibit A.

7.      The Credit Union financed $18,756.54 for the Defendant to purchase the Vehicle. The Defendant was to make monthly payments of $397.62 on or before the last day of each month beginning May 30, 2019.

8.      The Vehicle Loan is secured by a lien on the title of the Vehicle. A copy of the Vehicle's electronic title is attached hereto as Exhibit B.

9.      The Defendant never made a payment to the Credit Union pursuant to the terms of the Vehicle Loan and failed to retain insurance.

10.     The Credit Union made several attempts to contact the Defendant to inform him he had defaulted on the Vehicle Loan.

11.     The Defendant never responded to the Credit Union's attempts to contact him.

12. Due to the default and lack of communication from the Defendant, beginning in August 2019, the Credit Union was actively searching for the Vehicle using a repossession company.

13. On or about August 31, 2019, the repossession company made contact with the Defendant but the Defendant refused to disclose the location of the Vehicle and refused to provide any information to the repossession company.

14. For several more months, the Defendant did not respond to the Credit Union's attempts to contact or to recover the Vehicle.

15. Throughout the Credit Union's attempt to recover the collateral, the Defendant provided contradictory information as to the location and condition of the Vehicle.

16. During this time, using the license plate information of the Vehicle, the repossession company could see someone was driving the Vehicle.

17. On several occasions, the Credit Union asked the Defendant to file a police report.

18. The Defendant did not file a police report.

19. In March 2020, the Defendant told the Credit Union that the car was towed, however, the car was still being driven in early 2020.

20. On March 27, 2021, the Defendant voluntarily filed for relief under Chapter 7 of the United States Bankruptcy Code.

21. At the time of the bankruptcy filing, the balance due on the Vehicle Loan was $21,769.54. A true and correct copy of the transaction history for the Vehicle Loan is attached hereto as Exhibit C.

22. At the time of the bankruptcy filing, the Vehicle had a value of $11,075.00. Attached hereto as Exhibit D is a true and correct copy of the Vehicle's NADA valuation.

56925 Durrly Complaint

23. The Credit Union paused repossession efforts once the Defendant filed his bankruptcy case.

24. The Defendant did not list the Vehicle on his sworn bankruptcy schedules.

25. On April 23, 2021, this court entered an order modifying the stay as to the Vehicle so that the Credit Union could continue its attempts to recover the Vehicle.

26. As of the date of filing this Complaint, the Credit Union is unable to find the Vehicle to mitigate its losses.

## COUNT I: CLAIM FOR RELIEF PURSUANT TO 11 U.S.C. §523(a)(2)(A)

27. The Credit Union repeats paragraphs 1 through 26 as paragraph 27.

28. On or about March 1, 2019, the Defendant applied for and received an extension of credit to finance the purchase of the Vehicle.

29. The Defendant agreed to make timely monthly payments pursuant to the terms of the Vehicle Loan. The Defendant agreed to maintain the Vehicle and retain adequate insurance on the Vehicle. See Exhibit A.

30. At the time, the Defendant knew he would not make the payments pursuant to the Vehicle Loan.

31. The Credit Union relied on the Defendant's promise to repay the Vehicle Loan, to maintain the Vehicle, and to retain insurance when it provided the financing for the Defendant to purchase the Vehicle.

32. The Defendant failed to make a single payment on the Vehicle Loan, failed to maintain the Vehicle and failed to insure the Vehicle.

33. There was no change in circumstance between the time the Defendant applied for the loan and the date he defaulted on the terms of the loan.

4

34. The Defendant refused to cooperate with the Credit Union when they tried to find the Vehicle to mitigate the damages of the defaulted loan.

35. Upon information and belief, the Defendant gave the Vehicle to a third party.

36. The Credit Union has suffered damages as it does not have the Vehicle and the Defendant seeks to discharge the loan.

37. The Defendant knows that the Vehicle is the collateral for the Vehicle Loan that will be discharged upon completion of the Chapter 7 bankruptcy case.

WHEREFORE, Altra Federal Credit Union respectfully requests that this Court find the debt owed to the Credit Union non-dischargeable pursuant to 11 U.S.C. §§523(a)(2(A) and enter judgment in the amount of $21,764.54 plus interest, costs and attorneys' fees and for further relief as this Court deems just.

## COUNT II: CLAIM FOR RELIEF PURSUANT TO 11 U.S.C. §523(a)(6)

38. The Credit Union repeats paragraphs 1 through 37 as paragraph 38.

39. The Defendant entered into a Vehicle Loan agreement with the Credit Union and failed to make a single payment on the Vehicle Loan.

40. The Defendant has failed to turn the Vehicle over to the Credit Union.

41. The Defendant made false statements to the Credit Union regarding the whereabouts of the Vehicle.

42. The Defendant failed to insure the Vehicle.

43. Upon information and belief, the Defendant gave the Vehicle to a third person and refuses to turn the Vehicle over to the Credit Union.

44. The Defendant willfully and wrongfully transferred the Vehicle to a third person to the detriment of the Credit Union.

45. As of the date of filing this Complaint, the Defendant has refused to turn over the Vehicle to the Credit Union.

46. The Defendant knows that the Vehicle is the collateral for the Vehicle Loan that will be discharged upon completion of the Chapter 7 bankruptcy case.

WHEREFORE, Altra Federal Credit Union respectfully requests that this Court find the debt owed to the Credit Union non-dischargeable pursuant to 11 U.S.C. §§523(a)(6) and enter judgment in the amount of $21,764.54 plus interest, costs and attorneys' fees and for further relief as this Court deems just.

### COUNT III: CLAIM FOR RELIEF PURSUANT TO 11 U.S.C. §727(a)(2)

47. The Credit Union repeats paragraphs 1 through 46 as paragraph 47.

48. The Defendant actively seeks to conceal the Vehicle from repossession with the intent to hinder, delay and defraud the Credit Union's right to recover its collateral.

49. From May 2019 through the bankruptcy filing, the Defendant avoided the Credit Union when it attempted to contact him regarding the location of the collateral, provided false information, and failed to file a police report to the detriment of the Credit Union's collateral.

50. As of the date of filing this Complaint, the Defendant has refused to turn over the Vehicle to the Credit Union.

51. The Credit Union continues to incur costs of repossession, attorney's fees for the Vehicle that continues to depreciate, which has been caused by the Defendant's failure to disclose the correct location of the Vehicle or make arrangements for the surrender of the Vehicle.

WHEREFORE, Altra Federal Credit Union respectfully requests that this Court enter an order against the Defendant denying discharge and for further relief as this Court deems just.

## **COUNT IV: CLAIM FOR RELIEF PURSUANT TO 11 U.S.C. §727(a)(4)(A)**

52. The Credit Union repeats paragraphs 1 through 51 as paragraph 52.

53. On March 2, 2021, the Defendant filed a sworn Petition and Schedules with the United States Bankruptcy Court.

54. The Defendant's Schedule A/B declares that he has no ownership or equitable interest in any vehicle.

55. The Defendant's Statement of Financial Affairs declares that he has not sold or transferred any property to anyone in the previous two years.

56. The Defendant failed to disclose an asset, a 1999 Infiniti Q45, which is registered to the Defendant.

57. The Defendant failed to disclose another asset, a Cadillac that he had possession of in 2020.

WHEREFORE, Altra Federal Credit Union respectfully requests that this Court enter an order against the Defendant denying discharge and for further relief as this Court deems just.

Respectfully submitted,
Altra Federal Credit Union

**TRUNKETT & TRUNKETT, P.C.**
20 N. Wacker Drive, Suite 1434
Chicago, IL 60606
312.324.3101
Kerry Trunkett: 6188221
Caroline Hasten: 6316656

By: _/s/ Caroline Hasten_
Caroline Hasten, One of Its Attorneys

[Prepaid Finance Charge Not Included]
CONSUMER
W.B.A. 431S(B) (1/8/10)
© Wisconsin Bankers Association 2011

**MOTOR VEHICLE CONSUMER SIMPLE INTEREST INSTALLMENT SALE AND SECURITY AGREEMENT**
(Do Not Use For A Residential Dwelling)

Boxes Checked Are Applicable.
Boxes Not Checked Are Inapplicable.

**1. CREDIT SALE AGREEMENT**

**Goods Sold and Credit Request.** I purchased from the undersigned seller ("Seller") at the price and on the terms of a separate purchase agreement the following goods, and I acknowledge receipt of them, in satisfactory condition. I request that the sale be financed on the terms of this Agreement and agree that all terms and conditions of the purchase agreement, other than financial terms and conditions, survive the execution of this Agreement. I agree to pay to Seller the Amount Financed shown in Section 3 below, plus Finance Charge, according to the Payment Schedule shown in Section 3 below. Finance Charge is figured on a daily basis by applying the Annual Percentage Rate disclosed in Section 3 below to the unpaid part of the Amount Financed until the final scheduled maturity date. ☒ If checked here, and I do not pay the unpaid balance in full by the final scheduled maturity date, Seller will apply and I agree to pay interest at a post maturity rate of 9.24% per year on my outstanding balance until paid in full. Payments shall be applied (to the extent not prohibited by the Wisconsin Consumer Act) in such order as Seller elects to charges and amounts due under this Agreement. Amounts disclosed in Sections 2 and 3 are computed on the assumption that all installments will be paid when due and my actual Finance Charge, Total Sale Price and Total of Payments may be more than the disclosed amount if I make payments late or for less than the scheduled amount.

| NEW OR USED | YEAR | NO. CYL | MAKE-TRADE NAME | BODY STYLE (IF TRUCK, TONS CAPACITY) | MODEL | SERIAL NUMBER OR IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|
| USED | 2011 | 6 | BMW | 535I | 5 SERIES | WBAFR7C58BC681262 |

If applicable, titled or to be titled in name of ___EUGENE E BURRLY___

**Late Charge and Other Charges.** I agree to pay the Late Charge shown in Section 3 below. If Seller charges me interest after the final scheduled maturity date, I will not pay any late charge on the final scheduled payment amount. I also agree to pay a charge of $_____, as permitted under §422.202(1)(d), Wis. Stats., for each check presented for payment under this Agreement which is returned unsatisfied.

**2. ITEMIZATION OF AMOUNT FINANCED**

(a) Cash Price .................................................................................................................. (a) $ 13623.00
  (including $ N/A to N/A for N/A ; $ N/A
  to N/A for N/A )
(b) Trade-in: Year N/A Make N/A Model N/A
  Allowance $ N/A – Lien/Lease Payoff $ N/A
  Net Trade-in Value of ...................................................................................................... (b) $ 0
(c) Total Cash Received $ 1000.00 (Includes factory or manufacturer rebate of $ N/A ) .. (c) $ 1000.00
(d) Total Downpayment: Cash $ 1000.00 + Total Net Trade In Value $ 0
  (if negative, enter "0" and see line (f)(4) below) = Total Downpayment of .......................... (d) $ 1000.00
(e) Unpaid balance of the cash price (a - d) ........................................................................ (e) $ 12623.00
(f) Amounts paid to others on my behalf (Seller may keep a portion of these amounts):
  (1) To public officials for:
    Sales Tax ............................................................................................ $ 969.54
    Filing Fees (Notation and Release of Lien) ........................................... $ 29.50
    Title Application, Transfer & Registration .............................................. $ 144.50
  (2) To property insurance company for coverages checked
    below (actual cash value) ..................................................................... $ N/A
    ☐ $ N/A ___ Deductible Comprehensive
    ☐ $ N/A ___ Deductible Collision
    ☐ Fire, Theft and Combined Additional Coverage
  (3) To liability insurance company ............................................................. $ N/A
  (4) To N/A for prior credit or lease balance ..... $ N/A
  (5) To _____ for MAINTENANCE $ 509.00
  (6) To _____ for SERVICE CON/GAP $ 4492.00
  [Subtotal for computing credit insurance premium
  e + f(1) through (6) $ 18766.54 ]
  (7) To credit life insurance company .......................................................... $ N/A
  (8) To credit accident and sickness insurance company ............................ $ N/A
    Total Amount Paid to Others ..................................................................... (f) $ 6143.54
(g) Amount Financed (e + f) .................................................................................................. (g) $ 18766.54
(h) Finance Charge ............................................................................................................... (h) $ 5090.66
(i) Total of Payments (g + h) .................................................................................................. (i) $ 23857.20
(j) Total Sale Price (d + i) ...................................................................................................... (j) $ 24857.20

**3. TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 1000.00 | ("e" means an estimate) |
|---|---|---|---|---|---|
| 9.24 % | $ 5090.66 | $ 18766.54 | $ 23857.20 | $ 24857.20 | |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 397.62 | MONTHLY BEGINNING: 05/30/2019 UNTIL PAID IN FULL. |
| N/A | $ N/A | N/A |

**Security.** I am giving a security interest in the goods being purchased.
**Late Charge.** If a payment is not paid on or before the 10th day after its due date, I will be charged $_____ or _____% of the unpaid amount, whichever is less.
**Prepayment.** If I pay off early, I will not have to pay a penalty.
I should see my contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

**4. SECURITY AGREEMENT**

I grant to Seller a security interest in the goods described in Section 1 above, and all accessions to and proceeds of such goods ("Collateral"). The Collateral secures performance of all my obligations in this Agreement and all extensions, modifications and renewals of them ("Obligations").

**5. COVENANTS**

(a) **Ownership, Purpose and Use.** Acting alone, I may grant a security interest in the Collateral. The Obligations under this Agreement are incurred and the Collateral is acquired primarily for personal, family or household purposes. I agree that the Collateral will not be used as a residential dwelling.
(b) **Title.** Vehicle will be ☒ titled in Wisconsin ☐ titled in _____ ☐ not titled.
(c) **Location.** The Collateral will be kept at the address below Section 7, or if not, at: _____
_____ (NO. AND STREET) _____ (CITY OR TOWN) _____ (STATE)
Such location shall not be changed without providing at least 30 days prior written notice of the change to Seller, but I intend that the Collateral, wherever located, is covered by this Agreement.
(d) **Marital Information. For Wisconsin resident only:** I am ☐ married ☒ unmarried ☐ legally separated. If I am married and my spouse is not signing below the name of my spouse is N/A _____ and my spouse resides at ☐ the address shown below Section 7 or at ☐ N/A
(e) **Marital Purpose.** If I am a married Wisconsin resident, the obligation evidenced by this Agreement is being incurred in the interest of my marriage or family.
X _____ CUSTOMER
(f) **Name and Address.** My legal name is as set forth below Section 7. The address of my principal residence is as set forth below Section 7. I will not change my legal name or address without providing at least 30 days prior written notice of the change to Seller.
(g) **Additional Covenants.** I shall observe and comply with the Additional Provisions on the reverse side of this Agreement and shall not permit an event of default to occur.

**6. INSURANCE AND DEBT CANCELLATION COVERAGE**

(a) CREDIT LIFE AND CREDIT ACCIDENT AND SICKNESS INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN BELOW AND AGREE TO PAY THE ADDITIONAL COST. My decision to buy or not buy such insurance will not be a factor in the credit approval process. I want the insurance at the cost(s) shown below for the term of the Agreement (or N/A months, whichever is less) subject to terms and conditions of separate policy or certificate of insurance.

Credit Life Insurance $ N/A | Credit Accident & Sickness Insurance $ N/A
I want credit life insurance. | I want credit accident and sickness insurance.
X N/A INSURED | X N/A INSURED
X N/A JOINT INSURED | X N/A JOINT INSURED

(c) I MAY OBTAIN PROPERTY AND LIABILITY INSURANCE FROM ANYONE I WANT THAT IS REASONABLY ACCEPTABLE TO SELLER. If I get the insurance from Seller, I will pay $ N/A for an estimated term of N/A months.

(d) WARNING: Unless an amount appears on line (f)(3) of Section 2, insurance coverage hereunder is not public liability insurance and does not protect the driver of the vehicle from liability for damages resulting from negligent use of the vehicle.

(b) DEBT CANCELLATION COVERAGE, SPECIFICALLY CALLED GUARANTEED AUTOMOBILE PROTECTION ("GAP"), IS NOT REQUIRED TO OBTAIN CREDIT AND GAP WILL NOT BE PROVIDED UNLESS I ELECT SUCH COVERAGE AND AGREE TO PAY THE ADDITIONAL COST. I elect GAP and agree to pay the cost shown below for the original term of this Agreement (or 60 months, whichever is less), subject to terms and conditions of the separate GAP election or description of coverage. GAP coverage cost is $ 495.00

|   |   |   |   |   |
|---|---|---|---|---|
| | Sales Tax | | $ | 969.54 |
| | Filing Fees (Notation and Release of Lien) | | $ | 29.50 |
| | Title Application, Transfer & Registration | | $ | 144.50 |
| (2) | To property insurance company for coverages checked below (actual cash value) | | $ | N/A |

- [ ] $ N/A Deductible Comprehensive
- [ ] $ N/A Deductible Collision
- [ ] Fire, Theft and Combined Additional Coverage

(3) To liability insurance company .................... $ N/A
(4) To N/A for prior credit or lease balance ..... $ N/A
(5) To _____ for MAINTENANCE $ 525.00
(6) To _____ for SERVICE CON/GAP $ 4492.00
[Subtotal for computing credit insurance premium e + f(1) through (6) $ 18766.54 ]
(7) To credit life insurance company .................... $ N/A
(8) To credit accident and sickness insurance company .................... $ N/A
Total Amount Paid to Others .................... (f) $ 6143.54
(g) Amount Financed (e + f) .................... (g) $ 18766.54
(h) Finance Charge .................... (h) $ 5090.66
(i) Total of Payments (g + h) .................... (i) $ 23857.20
(j) Total Sale Price (d + i) .................... (j) $ 24857.20

### 3. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 1000.00 | ("e" means an estimate) |
|---|---|---|---|---|---|
| 9.24 % | $ 5090.66 | $ 18766.54 | $ 23857.20 | $ 24857.20 | |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 397.62 | MONTHLY BEGINNING: 05/30/2019 UNTIL PAID IN FULL. |
| N/A | $ N/A | N/A |

**Security.** I am giving a security interest in the goods being purchased.
**Late Charge.** If a payment is not paid on or before the 10th day after its due date, I will be charged $ ___ or ___ % of the unpaid amount, whichever is less.
**Prepayment.** If I pay early, I will not have to pay a penalty.
I should see my contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

### 4. SECURITY AGREEMENT
I grant to Seller a security interest in the goods described in Section 1 above, and all accessions to and proceeds of such goods ("Collateral"). The Collateral secures performance of all my obligations in this Agreement and all extensions, modifications and renewals of them ("Obligations").

### 5. COVENANTS
(a) **Ownership, Purpose and Use.** Acting alone, I may grant a security interest in the Collateral. The Obligations under this Agreement are incurred and the Collateral is acquired primarily for personal, family or household purposes. I agree that the Collateral will not be used as a residential dwelling.
(b) **Title.** Vehicle will be [X] titled in Wisconsin [X] titled in _____ [ ] not titled.
(c) **Location.** The Collateral will be kept at the address below Section 7, or if not, at: _____
(NO AND STREET) (CITY OR TOWN) (STATE)
Such location shall not be changed without providing at least 30 days prior written notice of the change to Seller, but I intend that the Collateral, wherever located, is covered by this Agreement.
(d) **Marital Information.** For Wisconsin resident only: I am [ ] married [X] unmarried [ ] legally separated. If I am married and my spouse is not signing below the name of my spouse is N/A _____ and my spouse resides at [ ] the address shown below Section 7 or at [ ] N/A
(e) **Marital Purpose.** If I am a married Wisconsin resident, the obligation evidenced by this Agreement is being incurred in the interest of my marriage or family.
X _____
CUSTOMER
(f) **Name and Address.** My legal name is as set forth below Section 7. The address of my principal residence is as set forth below Section 7. I will not change my legal name or address without providing at least 30 days prior written notice of the change to Seller.
(g) **Additional Covenants.** I shall observe and comply with the Additional Provisions on the reverse side of this Agreement and shall not permit an event of default to occur.

### 6. INSURANCE AND DEBT CANCELLATION COVERAGE
(a) CREDIT LIFE AND CREDIT ACCIDENT AND SICKNESS INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN BELOW AND AGREE TO PAY THE ADDITIONAL COST. My decision to buy or not buy such insurance will not be a factor in the credit approval process. I want the insurance at the cost(s) shown below for the term of the Agreement (or N/A months, whichever is less) subject to terms and conditions of separate policy or certificate of insurance.
Credit Life Insurance $ N/A       Credit Accident & Sickness Insurance $ N/A
I want credit life insurance.       I want credit accident and sickness insurance.
X N/A        X N/A
INSURED        INSURED
X N/A        X N/A
JOINT INSURED        JOINT INSURED

(c) I MAY OBTAIN PROPERTY AND LIABILITY INSURANCE FROM ANYONE I WANT THAT IS REASONABLY ACCEPTABLE TO SELLER. If I get the insurance from Seller, I will pay $ N/A for an estimated term of N/A months.
(d) **WARNING:** Unless an amount appears on line f(3) of Section 2, insurance coverage hereunder is not public liability insurance and does not protect the driver of the vehicle from liability for damages resulting from negligent use of the vehicle.

(b) DEBT CANCELLATION COVERAGE, SPECIFICALLY CALLED GUARANTEED AUTOMOBILE PROTECTION ("GAP"), IS NOT REQUIRED TO OBTAIN CREDIT AND GAP WILL NOT BE PROVIDED UNLESS I ELECT SUCH COVERAGE AND SIGN AND AGREE TO PAY THE ADDITIONAL COST. I elect GAP and agree to pay the cost shown below for the original term of this Agreement (or 60 months, whichever is less), subject to terms and conditions of the separate GAP election or description of coverage. GAP coverage cost is $ 995.00
I acknowledge receipt of the description of GAP coverage separately provided to me.
I want GAP coverage.
X _____ (signature)       X N/A
CUSTOMER       CUSTOMER

### 7. PERSONS BOUND
"I", "my", "me" and "mine" includes each customer who signs this Agreement and our obligations are joint and several, except that _____
N/A
(NAME)
signs below solely to grant a security interest in the Collateral. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns. This Agreement includes the Additional Provisions on the reverse side of this Agreement. I have received a completed copy of this Agreement.
*The Annual Percentage Rate may be negotiable with Seller. Seller may assign this Agreement and retain its right to receive a part of the Finance Charge.*

| NOTICE TO CUSTOMER | (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF FINANCE CHARGE. |
|---|---|

Dated 03/01/2019

DAHL AUTOMOTIVE OF ONALASKA, INC (SEAL)     X _____ (SEAL)
SELLER                                        CUSTOMER
By: _____ (signature)                       * EUGENE E DUERLY
AUTHORIZED SIGNATURE
Seller's Address: 561 THEATER ROAD           X N/A (SEAL)
                                              CUSTOMER
ONALASKA WI 54650                             * N/A
This Agreement may be assigned to ("Assignee"):   Customer's Address: 500 EAST VETERAN ST
                                                  SEE SECTIONS 5(c), (d) and (f)
ALTRA FEDERAL CREDIT UNION
1700 OAK FOREST DR ONALASKA WI 54650          TOMAH WI 54660 CO:MONROE
                                              *Type or print name signed above.

WBA 431SB Consumer (10/18)

B. ADDITIONAL PROVISIONS

(a) **Maintenance of Collateral.** I shall: maintain the Collateral in good condition and repair and not permit its value to be impaired, keep it free from all liens, encumbrances and security interests prior in right to those of Seller; defend it against all claims and legal proceedings by persons other than Seller; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise transfer or dispose of it or permit it to become a fixture or accession to other goods except as specifically authorized in this Agreement or in writing by the Seller; and not permit it to be used in violation of any applicable law, regulation or policy of insurance, the violation of which could result in loss of or damage to any Collateral or impairment of the insurance on it. Loss of or damage to the Collateral shall not release me from any of the Obligations.

(b) **Insurance.** If the Collateral is of a value of $800 or more, and the amount financed (exclusive of insurance charges) is $800 or more, I shall keep all Collateral and Seller's interest in it, insured for all risks of physical damage to or loss of the Collateral throughout the term of this Agreement and any renewals, extensions or modifications of it under policies with such provisions, for such amounts (not more than the value of the Collateral or the aggregate outstanding balance of the Obligations, whichever is less) and by such insurers as shall be reasonably satisfactory to Seller from time to time. I shall furnish satisfactory evidence of such insurance to Seller. Subject to Seller's satisfaction, I am free to select the insurance agent or insurer through which such insurance is obtained by me. I assign (and direct any insurer to pay) to Seller the proceeds of all such insurance and any premium refund and authorize Seller to endorse in my name any instrument for such proceeds or refunds and, at the option of Seller, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to me. Seller is authorized, in my name or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Seller and any insurance on the Collateral, or cancel the same after the occurrence of an event of default and giving any prior notice required by the Wisconsin Consumer Act. If I fail to keep any required insurance on the Collateral, Seller may purchase such insurance for me; such insurance may be acquired by Seller solely to protect the interest of Seller (and will not cover my equity in the Collateral), and my obligation to repay Seller shall be in accordance with Section 8(e).

(c) **Inspection of Collateral.** Seller is authorized to examine the Collateral wherever located at any reasonable time or times; and I shall assist in making any such inspection.

(d) **Maintenance of Security Interests.** To the extent not prohibited by law, I shall pay all expenses and, upon request, deliver any document and take any action reasonably deemed advisable by Seller to preserve the Collateral or to establish, evidence, determine and maintain priority of, perfect, continue perfected, terminate and/or enforce Seller's interest in it or rights under this Agreement. I authorize Seller to file Uniform Commercial Code financing statements describing the Collateral and amendments to such financing statements and ratify any such financing statement or amendment filed prior to the date of this Agreement.

(e) **Authority of Seller to Perform for Me.** Seller may perform or cause to be performed any of my duties set forth in this Agreement with respect to preserving or insuring the Collateral, including without limitation, signing my name or paying any amount so required, if I fail to perform any of such duties after the written notice to me and a reasonable opportunity for me to perform, if any, required by law. The costs of Seller's performance shall be one of the Obligations secured by this Agreement, shall be payable by me upon demand and shall bear Finance Charge from the date of expenditure by Seller to the date of payment by me at the Annual Percentage Rate disclosed in Section 3 on the front of this Agreement.

(f) **Ability to Pay.** I shall not take any action or permit any event to occur which materially impairs my ability to pay any of the Obligations when due. Such events may include, without limitation, the fact that I, my spouse or any surety of the Obligations dies, changes marital status or domicile or becomes insolvent or the subject of bankruptcy or other insolvency proceedings.

(g) **Default.** Upon the occurrence of any one or more of the following Events of Default:
  (1) **Payments.** (i) if the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the due dates or the failure to pay the first or last payment within 40 days after its due date; (ii) if the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment which has remained unpaid for more than 60 days after its due date; or (iii) the failure to pay the only scheduled payment within 40 days after its due date;
  (2) **Nonperformance.** I fail to observe or perform any of my other covenants or duties contained in this Agreement and the failure materially impairs the condition, value or protection of or Seller's right in any Collateral, or materially impairs my ability to pay any of the Obligations when due; or
  (3) **False Statement.** I made a material false statement in my credit application to Seller that preceded this Agreement;
Seller shall have all of the rights and remedies for default provided by applicable law and this Agreement. With respect to such rights and remedies:
  (4) **Acceleration.** Each Obligation as to which an Event of Default has occurred shall, at the option of Seller and without further notice or demand, become immediately payable unless notice to me and an opportunity to cure is required by §425.105, Wis. Stats., and, in that event, such Obligation shall become payable if such default is not cured as provided in that statute, within 15 calendar days after mailing of such notice to me;
  (5) **Repossession.** Unless the Collateral is removed from Wisconsin under §421.201(5), Wis. Stats., abandoned under §425.207(2), Wis. Stats., or Seller has perfected its right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., I have a right to a court hearing on the issue of default before any repossession of the Collateral, but by surrendering the Collateral, I waive such right. Seller shall have the right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., provided Seller has given me, by mail, a notice containing all of the information required under §425.205(1g)(a), Wis. Stats., and I have not made a statement to Seller either that I am not in default under this Agreement or that I object to Seller's right to take possession of the Collateral and I made a demand by notifying Seller in writing within 15 days after Seller gives such notice to me that Seller proceed in court. Seller shall also have the right to take possession of the Collateral if it is removed from Wisconsin under §421.201(5), Wis. Stats., or abandoned under §425.207(2), Wis. Stats. Seller may take possession of the Collateral under these circumstances only if it does not commit a breach of the peace or enter a dwelling used by me as a residence except at my voluntary request. Seller may also take possession of the Collateral if I have surrendered the Collateral to Seller or Seller has obtained judgment in a proceeding for recovery of the Collateral.
  (6) **Assembling Collateral.** After Seller has the right to possession of Collateral, Seller may require me to assemble the Collateral and to make it available to Seller at a place designated by Seller which is reasonably convenient to both parties;
  (7) **Notice of Disposition.** Notice, when required by law, mailed to me at least 10 calendar days (counting the day of mailing) before the date of a proposed disposition of the Collateral is reasonable notice.
  (8) **Expenses and Application of Proceeds.** Seller may recover from me and the proceeds of disposition any expenses incurred in taking possession, holding, preparing for disposition and disposing of the Collateral, including reasonable attorneys' fees and court costs, to the extent not prohibited by the Wisconsin Consumer Act, if applicable. Seller is under no obligation to clean up or otherwise prepare the Collateral for sale. After deduction of allowed expenses, Seller shall apply the proceeds of disposition to the Obligations in such order and amounts as it elects, subject to the Wisconsin Consumer Act, if applicable, and
  (9) **Waiver.** Seller may waive any default without waiving any other subsequent or prior default by me.

(h) **Partial Prepayments.** Partial prepayments shall be applied by Seller or its assignee to the payment of unpaid principal owed on this Agreement at the time of the partial prepayment and all remaining scheduled payments due under this Agreement shall continue to be paid when due, unless I instruct Seller or its assignee otherwise.

(i) **Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin, except that recovery of Collateral shall be governed by the law of the state in which the Collateral is located at the time of recovery to the extent authorized by §421.201(5), Wis. Stats. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code and the Wisconsin Consumer Act. All references in this Agreement to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Unless otherwise required by the Wisconsin Consumer Act, invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision. If the Military Lending Act, 10 U.S.C. 987, and its implementing regulations, 32 C.F.R. part 232, as amended or renumbered from time to time ("MLA Law"), are applicable to this transaction, and Customer is a Covered Borrower under MLA Law, all, or any part of any provision(s) in this Agreement or in any other document connected to this transaction between Customer and Seller (or Assignee) or otherwise in favor of Seller, that is deemed to be prohibited by MLA Law, shall be deemed void, of no force or effect, and severed from this Agreement or the applicable document. The provisions or parts of them that are not severed shall remain in full force and effect.

(j) **Miscellaneous.** Without affecting my liability under this Agreement, Seller may, without notice, grant renewals or extensions, accept partial payments, release or impair any security interest or lien in collateral security for the Obligations or agree not to sue any party liable on this Agreement. Presentment, protest, demand and notice of dishonor are waived. I acknowledge that Seller has not made any representations or warranties with respect to, and that Seller does not assume any responsibility to me for, the collectability or enforceability of this Agreement or the financial condition of any of us. Each of us has independently determined the collectability and enforceability of this Agreement. This Agreement is intended by Seller and me as a final expression of this Agreement and as a complete and exclusive statement of its terms; there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns.

(k) **Defenses Against Assignee.**

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

(l) **TELEPHONE MONITORING AND CALLING:** I agree Seller or its assignee may monitor and record telephone calls regarding my account to assure the quality of service provided by Seller or its assignee. In order for Seller or its assignee to service my account or to collect any amounts I may owe, and subject to applicable law, I agree that Seller or its assignee may, from time to time make calls and send text messages to me using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number I provide to Seller or its assignee in connection with my account, including a mobile telephone number that could result in charges to me.

**ASSIGNMENT**

Seller assigns all rights and interest in this Agreement, Obligations and Collateral to Assignee.

1. **Warranties.** Seller warrants:
   (a) The Agreement is genuine and legally enforceable according to its terms; and no debtor was a minor or incompetent when it was executed;
   (b) All statements contained in the Agreement and the related purchase agreement and invoice delivered to Assignee are true and correct, contain no misrepresentation, and constitute the only agreement with respect to the Collateral; Seller has no notice of any matters not disclosed to Assignee which might impair any debtor's credit or equity in the Collateral; the disclosed cash downpayment and trade-in were actually received by Seller; Seller has not made and will not make any advance to debtor(s); Seller has no agreement with debtor to separately finance or impose finance charges on or refinance any pickup payment or to defer payment of a portion of the downpayment to a date later than due date of the second installment; and the amount of any factory or manufacturer rebates are accurately and separately described in the Agreement.
   (c) The Agreement and transactions out of which it arose comply with all applicable laws and regulations; Seller has performed or will perform all its obligations to debtor(s); and no debtor has, or has asserted, any defense, set-off or counterclaim to debtor's liability under the Agreement or the Obligations;
   (d) At the time of sale Seller had full authority to sell the Collateral to debtor(s) free of any security interest or other encumbrance, and the Collateral has been delivered to and accepted by debtor(s) within 10 days of the Agreement date and the security interest created by the Agreement is the only security interest in or encumbrance on the Collateral;
   (e) Within 10 days of delivery of the Collateral to debtor(s), Seller perfected or will perfect a first security interest in the Collateral (and Seller authorizes Assignee to file or record any continuations, amendments or assignments of or to any such filings or perfection documents);
   (f) Seller has full authority to assign this Agreement to Assignee; Seller will in reliance on the provisions of the above take steps Assignee requests to perfect the security interest created by the Agreement and to designate Assignee as secured party of record, and Assignee's interest in the Agreement is not subordinate to any security interest or other encumbrance.

2. **Authority of Assignee.** Assignee may, without notice and without impairing Assignee's rights against Seller, in the name of Seller or otherwise, take all actions and legal proceedings deemed advisable by Assignee with respect to the Agreement, the Obligations or the Collateral, including without limitation, modifying, extending or compromising any terms, discharging or releasing any person liable or releasing any security;

3. **Non-Liability of Assignee.** Assignee has no duty to perfect any security interest in the Collateral, to enforce any rights of Seller or to preserve rights under the Agreement or the Obligations against prior parties.

4. **Remedies of Assignee.** If:
   (a) Seller has executed this assignment under A below and if (i) any warranty of Seller is false or breached, or (ii) any claim is made that Assignee has not

between scheduled payments is more than 2 months, to have all or any part of one scheduled payment which has remained unpaid for more than 60 days after its due date, or (ii) the failure to pay the only scheduled payment within 40 days after its due date;

(2) **Nonperformance.** I fail to observe or perform any of my other covenants or duties contained in this Agreement if the failure materially impairs the condition, value or protection of or Seller's right in any Collateral, or materially impairs my ability to pay any of the Obligations when due; or

(3) **False Statement.** I made a material false statement in my credit application to Seller that preceded this Agreement;

Seller shall have all of the rights and remedies for default provided by applicable law and this Agreement. With respect to such rights and remedies:

(4) **Acceleration.** Each Obligation as to which an Event of Default has occurred shall, at the option of Seller and without further notice or demand, become immediately payable unless notice to me and an opportunity to cure is required by §425.105, Wis. Stats., and in that event, such Obligation shall become payable if such default is not cured as provided in that statute, within 15 calendar days after mailing of such notice to me;

(5) **Repossession.** Unless the Collateral is removed from Wisconsin under §421.201(5), Wis. Stats., abandoned under §425.207(2), Wis. Stats., or Seller has perfected its right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., I have a right to a court hearing on the issue of default before any repossession of any Collateral, but by surrendering the Collateral, I waive such right. Seller shall have the right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(a), Wis. Stats., provided Seller has given me, by mail, a notice containing all of the information required under §425.205(1g)(a), Wis. Stats., and I have not made a statement to Seller either that I am not in default under this Agreement or that I object to Seller's right to take possession of the Collateral and I made a demand by notifying Seller in writing within 15 days after Seller gives such notice to me that Seller proceed in court. Seller shall also have the right to take possession of the Collateral if it is removed from Wisconsin under §421.201(5), Wis. Stats., or abandoned under §425.207(2), Wis. Stats. Seller may take possession of the Collateral under these circumstances only if it does not commit a breach of the peace or enter a dwelling used by me as a residence except at my voluntary request. Seller may also take possession of the Collateral if I have surrendered the Collateral to Seller or Seller has obtained judgment in a proceeding for recovery of the Collateral.

(6) **Assembling Collateral.** After Seller has the right to possession of Collateral, Seller may require me to assemble the Collateral and to make it available to Seller at a place designated by Seller which is reasonably convenient to both parties;

(7) **Notice of Disposition.** Notice, when required by law, mailed to me at least 10 calendar days (counting the day of mailing) before the date of a proposed disposition of the Collateral is reasonable notice;

(8) **Expenses and Application of Proceeds.** Seller may recover from me and the proceeds of disposition any expenses incurred in taking possession, holding, preparing for disposition and disposing of the Collateral, including reasonable attorneys' fees and court costs, to the extent not prohibited by the Wisconsin Consumer Act, if applicable. Seller is under no obligation to clean up or otherwise prepare the Collateral for sale. After deduction of allowed expenses, Seller shall apply the proceeds of disposition to the Obligations in such order and amounts as it elects, subject to the Wisconsin Consumer Act, if applicable; and

(9) **Waiver.** Seller may waive any default without waiving any other subsequent or prior default by me.

(h) **Partial Prepayments.** Partial prepayments shall be applied by Seller or its assignee to the payment of unpaid principal owed on this Agreement at the time of the partial prepayment and all remaining scheduled payments due under this Agreement shall continue to be paid when due, unless I instruct Seller or its assignee otherwise.

(i) **Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin, except that recovery of Collateral shall be governed by the law of the state in which the Collateral is located at the time of recovery to the extent authorized by §421.201(5), Wis. Stats. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code and the Wisconsin Consumer Act. All references in this Agreement to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Unless otherwise required by the Wisconsin Consumer Act, invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions. If the Military Lending Act, 10 U.S.C. 987, and its implementing regulations, 32 C.F.R. part 232, as amended or renumbered from time to time ("MLA Law"), are applicable to this transaction, and Customer is a Covered Borrower under MLA Law, all, or any part of any provision(s) in this Agreement or in any other document connected to this transaction between Customer and Seller (or Assignee) or otherwise in favor of Seller, that is deemed to be prohibited by MLA Law, shall be deemed void, of no force or effect, and severed from this Agreement or the applicable document. The provisions or parts of them that are not severed shall remain in full force and effect.

(j) **Miscellaneous.** Without affecting my liability under this Agreement, Seller may, without notice, grant renewals or extensions, accept partial payments, release or impair any security interest or lien in collateral security for the Obligations or agree not to sue any party liable on this Agreement. Presentment, protest, demand and notice of dishonor are waived. I acknowledge that Seller has not made any representations or warranties with respect to, and that Seller does not assume any responsibility to me for, the collectability or enforceability of this Agreement or the financial condition of any of us. Each of us has independently determined the collectability and enforceability of this Agreement. This Agreement is intended by Seller and me as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns.

(k) **Defenses Against Assignee.**

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

(l) **TELEPHONE MONITORING AND CALLING:** I agree Seller or its assignee may monitor and record telephone calls regarding my account to assure the quality of service provided by Seller or its assignee. In order for Seller or its assignee to service my account or to collect any amounts I may owe, and subject to applicable law, I agree that Seller or its assignee may from time to time make calls and send text messages to me using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number I provide to Seller or its assignee in connection with my account, including a mobile telephone number that could result in charges to me.

**ASSIGNMENT**

Seller assigns all rights and interest in this Agreement, Obligations and Collateral to Assignee.

1. **Warranties.** Seller warrants:

(a) The Agreement is genuine and legally enforceable according to its terms; and no debtor was a minor or incompetent when it was executed.

(b) All statements contained in the Agreement and the related purchase agreement and invoice delivered to Assignee are true and correct, contain no misrepresentation, and constitute the only agreement with respect to the Collateral. Seller has no notice of any matter not disclosed to Assignee which might impair any debtor's credit or equity in the Collateral; the disclosed cash downpayment and trade-in were actually received by Seller; Seller has not made and will not make any advance to debtor(s); Seller has no agreement with debtor to separately finance or impose finance charges on or reference any pickup payment or to defer payment of a portion of the downpayment to a date later than due date of the second installment; and the amount of any factory or manufacturer rebates are accurately and separately described in the Agreement.

(c) The Agreement and transactions out of which it arose comply with applicable laws and regulations. Seller has performed or will perform all its obligations to debtor(s), and no debtor has, or has asserted, any defense, set-off or counterclaim to debtor's liability under the Agreement or the Obligations.

(d) At the time of sale Seller had full authority to sell the Collateral to debtor(s) free of any security interest or other encumbrance; and the Collateral has been delivered to and accepted by debtor(s) within 10 days of the Agreement date; and the security interest created by the Agreement is the only security interest in or encumbrance on the Collateral.

(e) Within 10 days of delivery of the Collateral to debtor(s), Seller perfected or will perfect a first security interest in the Collateral (and Seller authorizes Assignee to file or record any continuations, amendments or assignments of or to any such filings or perfection documents).

(f) Seller has full authority to assign the Agreement to Assignee. Seller will, in addition to the provisions of section 1(e) above, take steps Assignee requests to perfect the security interest created by the Agreement and to designate Assignee as secured party of record, and Assignee's interest in the Agreement is not subordinate to any security interest or other encumbrance.

2. **Authority of Assignee.** Assignee may, without notice and without impairing Assignee's right against Seller, in the name of Seller or otherwise, take all actions and legal proceedings deemed advisable by Assignee with respect to the Agreement, the Obligations or the Collateral, including without limitation, modifying, extending or compromising any terms, discharging or releasing any person liable or releasing any security.

3. **Non-Liability of Assignee.** Assignee has no duty to perfect any security interest in the Collateral, to enforce any rights of Seller or to preserve rights under the Agreement or the Obligations against prior parties.

4. **Remedies of Assignee.** If

(a) Seller has executed this assignment under A below and if (i) any warranty of Seller is false or breached, or (ii) any claim is made that Assignee has not acquired the Agreement in good faith as defined in §422.407, Wis. Stats.; or

(b) Seller has executed this assignment under B below and if (i) any warranty of Seller is false or breached, or (ii) Assignee receives notice of a complaint, claim or defense of debtor against Seller or Assignee; or

(c) Seller has executed this assignment under C below and if (i) debtor fails to make a payment when due, or to perform or rectify breach of any other covenant in the Agreement or Obligations; or (ii) any warranty of Seller is false or breached, or (iii) Assignee receives notice of a complaint, claim or defense against Seller or Assignee,

then Seller shall, upon request of Assignee, pay the Assignee the full amount unpaid (less Assignee's unearned charges), plus expenses incurred by Assignee in endeavoring to collect or enforce the Agreement and this assignment (subject to provisions of any separate written agreement between Assignee and Seller respecting the purchase of the Agreement); and Seller indemnifies and agrees to defend and hold Assignee harmless from any loss, liability, penalty, claim, damage or expense (including reasonable attorneys' fees) claimed or incurred by reason thereof or claimed or incurred under section 8(e). Upon such payment Assignee will, at the request of Seller, reassign the Agreement to Seller without recourse or warranties whatsoever.

A. (Without recourse except as provided in 4(a) above)     B. (Without recourse except as provided in 4(b) above)

_____(SEAL)     _____(SEAL)

By _____     By _____
      AUTHORIZED SIGNATURE

C. (With full recourse as provided in 4(c) above)

_____(SEAL)

Dated: _____

By _____
      AUTHORIZED SIGNATURE



## Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| WBAFR7C50BC601262 | 2011 | BMW | | AUT | | |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| | | 19064TJ810011 | 74396 | WI | 03-05-2019 |

Full Name of Owner(s)
DURRLY EUGENE EDWARD
500 E VETERANS ST # 405
TOMAH, WI 546603105

Vehicle Brand(s)

Liens(s)
ALTRA FEDERAL CREDIT UNION
[1700 Oak Forest Drive
Onalaska, WI 54650]*

Lien Date: 03-05-2019
ELT Number: 00005686
LTN: LTN190306-22

Odometer Brand(s)

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: QHUYMK2Y1F    **THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of Decision Dynamics, Inc.



Eugene E. Durrly  
27 Fulton Ave  
Waukegan  IL  60085

<strong>EXHIBIT C</strong>

```
------------------------------------ Transaction History Account Number ████████ ------------------------------------
                                          03-16-2018 to 04-06-2021
```

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| New Loan Disbursement New Loan | 03-01-2019 | 03-05-2019 | | Note Balance | 18766.54 | 18766.54 |
| Late Charge Assessment | 06-09-2019 | 06-09-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 07-10-2019 | 07-10-2019 | | Late Charge Balance | 10 | |
| Financed Disbursement Force Pl | 07-23-2019 | 07-23-2019 | | Note Balance | 3003 | 21769.54 |
| | | | | CPI Insurance Financed | 0 | |
| | | | | Total | -3003 | |
| Late Charge Assessment | 08-09-2019 | 08-09-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 09-09-2019 | 09-09-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 10-10-2019 | 10-10-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 11-09-2019 | 11-09-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 12-10-2019 | 12-10-2019 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 01-09-2020 | 01-09-2020 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 02-09-2020 | 02-09-2020 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 03-10-2020 | 03-10-2020 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 04-09-2020 | 04-09-2020 | | Late Charge Balance | 10 | |
| Late Charge Assessment | 05-10-2020 | 05-10-2020 | | Late Charge Balance | 10 | |
| Financed Disbursement CPI Insu | 06-08-2020 | 06-08-2020 | | Note Balance | 3003 | 24772.54 |
| | | | | CPI Insurance Financed | 0 | |
| | | | | Total | -3003 | |
| Financed Rebate Receipt CPI In | 06-09-2020 | 06-09-2020 | | Note Balance | -3003 | 21769.54 |
| | | | | CPI Insurance Financed | 0 | |
| | | | | Total | 3003 | |
| Late Charge Waive | 06-09-2020 | 06-09-2020 | 05-30-2019 | Late Charge Balance | -10 | |
| | | | 06-30-2019 | Late Charge Balance | -10 | |
| | | | 07-30-2019 | Late Charge Balance | -10 | |
| | | | 08-30-2019 | Late Charge Balance | -10 | |
| | | | 09-30-2019 | Late Charge Balance | -10 | |
| | | | 10-30-2019 | Late Charge Balance | -10 | |
| | | | 11-30-2019 | Late Charge Balance | -10 | |
| | | | 12-30-2019 | Late Charge Balance | -10 | |

Eugene E. Durrly
27 Fulton Ave
Waukegan IL 60085

---------------------------------- Transaction History Account Number ▮▮▮▮▮ ----------------------------------
03-16-2018 to 04-06-2021

| Description | Eff Date | Post Date | Due Date | Balance Type | Amount | Running Bal |
|---|---|---|---|---|---|---|
| | | | 01-30-2020 | Late Charge Balance | -10 | |
| | | | 02-29-2020 | Late Charge Balance | -10 | |
| | | | 03-30-2020 | Late Charge Balance | -10 | |
| | | | 04-30-2020 | Late Charge Balance | -10 | |
| | | | | Total | 120 | |
| Full Charge Off | 06-09-2020 | 06-09-2020 | | Charge Off Balance | 21769.54 | |
| Charge Off Recovery recovery p | 06-17-2020 | 06-17-2020 | | Note Balance | -5 | 21764.54 |
| | | | | Charge Off Balance | -5 | |
| | | | | Total | -5 | |



## Vehicle Information

# EXHIBIT D

| | |
|---|---|
| **Vehicle:** | 2011 BMW 5 Series Sedan 4D 535i 3.0L I6 Turbo |
| **Region:** | Midwest |
| **Period:** | March 27, 2021 |
| **VIN:** | WBAFR7C50BC601262 |
| **Mileage:** | 127,500 |
| **Weight:** | 4,056 |



## NADA Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Clean Retail | $11,075 | N/A | N/A | **$11,075** |